IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID A. CONDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-04-3411 |
| | § | |
| HUNTING ENERGY SERVICES L.P., | § | |
| | § | |
| | § | |
| Defendant. | § | |

ORDER

Pending before the Court is Plaintiff David Condon's Motion to Alter or Amend Judgment and/or for New Trial (Document No. 86). After considering the motions, submissions, and applicable law, the Court determines the motion should be granted in part and denied in part.

BACKGROUND

This case arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE § 21.001 *et seq.* Plaintiff David Condon ("Condon") worked as an outside salesman for Defendant Hunting Energy Services, L.P. ("Hunting"), a Houston-

based oilfield services company.[1]  On August 29, 2002, Hunting discharged Condon, allegedly as part of a company-wide reduction in force.  Condon, who was 58 at the time, alleged that Hunting selected him for the reduction because of his age and despite the fact that he was the most productive member of his sales group.

On August 11, 2006, a jury returned a verdict in favor of Condon on his age discrimination claims, awarding him $18,000 damages for lost wages and benefits.[2]  Additionally, the jury determined that Condon's discharge was willful.  Condon subsequently moved to amend the Court's final judgment, seeking $18,000 liquidated damages, $337,768 in attorneys' fees, $25,022 in costs, and both pre- and post-judgment interest.  Finally, Condon asks the Court to either order a new trial or award him compensatory damages for pain, suffering and mental anguish, a damages request explicitly rejected by the jury.  The Court will consider each motion in turn.

---

[1] Condon sold pipe and related supplies for Vinson Supply Co. from 1989 to 2001, when Hunting bought certain assets of the company.  Hunting hired Vinson's former employees, including Condon, who was 57 at the time of the acquisition.

[2] The jury declined Condon's request for additional compensatory or punitive damages.  Additionally, the jury expressly determined that Hunting did not act with malice or reckless indifference to Condon's state protected rights against age discrimination.

LAW AND ANALYSIS

I.  LIQUIDATED DAMAGES

Condon seeks an award of liquidated damages pursuant to the jury's determination that Hunting wilfully violated the ADEA. When an employer's violation of the ADEA is willful, the statute expressly provides for an award of liquidated damages in an amount that effectively doubles a plaintiff's back pay award. *See* 29 U.S.C. § 626(b), *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 616 (1993); *Julian v. City of Houston, Texas*, 314 F.3d 721, 730 n.36 (5th Cir. 2002). With respect to liquidated damages under the ADEA, the United States Court of Appeals for the Fifth Circuit reasoned that "the plain language of the statute requires the interpretation that liquidated damages in an amount equal to the back pay award are mandatory upon a finding of willfulness." *Tyler v. Union Oil Co. of Calif.*, 304 F.3d 379, 401 (5th Cir. 2002). In the instant action, the jury concluded that Hunting's violation of the ADEA was willful. Accordingly, the Court grants Condon's motion for $18,000 in liquidated damages. *See id*.

II.  ATTORNEYS' FEES

As the prevailing party, Condon seeks $331,530 in attorneys' fees and $2,238.31 in attorney expenses. Title 42 U.S.C. § 2000e-5(k) provides that the court, "in its discretion, may allow the prevailing party, other than the Commission or the United

3

States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000e-5(k). To determine the amount to be awarded, courts use the lodestar method. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). Under this method, the district court first determines both the hourly rates for the lawyers involved in the case and the reasonable number of hours spent on the litigation. *Id*. at 324 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Green v. Adm'rs. of Tulane Educ. Fund*, 284 F.3d 642, 661 (5th Cir. 2002). Second, the district court determines the lodestar by multiplying the reasonable hourly rates by the number of reasonable hours expended in the litigation. *Kellstrom*, 50 F.3d at 324; *Green*, 284 F.3d at 661. Finally, the court either accepts the lodestar or adjusts it upward or downward based upon the twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *Kellstrom*, 50 F.3d at 329. Thus, the Court first will determine an appropriate billing rate.

 A. Billing Rates

Condon requests attorneys' fees for two attorneys who represented him at trial, Cliffe E. Laborde and Melissa Lutgring Theriot of the Louisiana-based law firm Laborde & Neuner, as well as fees for other associates, legal assistants and law clerks at the firm who worked on the case. Laborde submits his hourly rate in the case was

$350 and requests hourly billing rates of $250 for Theriot, $150 for associates, and $100 for legal assistants and law clerks. As the fee applicant, Laborde bears the burden of producing evidence that the requested rate is appropriate within the Houston market. *See Deltatech Constr., LLC v. The Sherwin-Williams Co.*, No. Civ.A.04-2890, 2005 WL 3542906, at *3 (E.D. La. Nov. 3, 2005). "Reasonable hourly rates are determined by looking to the prevailing market rates in the relevant legal community." *Green*, 284 F.3d at 662 (citing *Watkins v. Fordice*, 7 F.3d 453, 458-59 (5th Cir. 1993)). Laborde avers that those rates are well within the prevailing hourly rates charged by other attorneys and legal assistants in the Houston community of similar experience for this type of litigation. Laborde relies on the Court's decision in a prior case to award an experienced employment practitioner a $355 hourly rate. *See Firth v. Don McGill of West Houston, Ltd.*, No. Civ.A. H-04-0659, 2006 WL 846377, at *6 (S.D. Tex. March 28, 2006).

Hunting challenges this fee application. In particular, Hunting argues that unlike the employment law specialist who received a $355 hourly rate, Laborde and Theriot had no prior experience in employment-related cases. Moreover, Hunting directs the Court to Laborde's billing records, which indicate time spent researching basic principles of employment law. Hunting avers that this research would have been unnecessary if either of Condon's trial attorneys had any prior employment law

experience. While the Court recognizes that Laborde and Theriot have extensive experience in their respective areas of practice, the Court agrees with Hunting that neither attorney appears to have significant prior employment law expertise to justify their proposed billing rates in this case.[3] Accordingly, the Court reduces Laborde's hourly rate to $200 an hour and Theriot's to $150 an hour.[4] The other associates, whose backgrounds are not detailed, are entitled to a $100 hourly billing rate, and the Court authorizes a $50 hourly billing rate for law clerks and legal assistants who worked on this litigation. *See generally League of United Latin Am. Citizens # 4552*, 119 F.3d at 1234 (noting that "[t]he hourly fee award must be supported by the record . . .").

B. Hours Expended on the Litigation

Next, the Court must determine whether the hours expended by Laborde and his law firm were "reasonably expended." *See Kellstrom*, 50 F.3d at 329 (quoting *Alberti*

---

[3] Laborde, whose practice areas include admiralty, insurance and corporate law, has been licensed to practice in Louisiana since 1978. Theriot's practice focuses on admiralty and maritime law, toxic torts and appellate work. She has been admitted to practice in Louisiana and Texas since 1993.

[4] Laborde's affidavit provides information relative to his and Theriot's legal experience. However, the Court notes that he provides no evidence other than his conclusion and his reference to the Court's decision in *Firth* to show that the billing rates he submitted were reasonable based on prevailing Houston rates. *See, e.g.*, *League of United Latin Am. Citizens # 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) (noting that the plaintiffs relied upon their own affidavits and prior fee awards in addition to the affidavit of a practitioner from that judicial district).

*v. Klevenhagen*, 896 F.2d 927, 933-34 (5th Cir. 1990)). Courts should examine both whether the total number of hours claimed is reasonable and whether specific hours claimed were reasonably expended. *League of United Latin Am. Citizens # 4552*, 119 F.3d at 1232. Any hours not reasonably expended, excessive or duplicative should be excluded from consideration. *Id*.; *see also Hensley*, 461 U.S. at 434; *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

Here, Laborde seeks a fee for 1,339.8 hours of attorney and paralegal time.[5] He contends the hours expended were reasonable because of Hunting's "stringent and rigorous" defense. For example, he avers his firm worked additional hours filing a motion to compel answers to its interrogatories; on another occasion, Hunting produced more than 5,000 documents during discovery but never indicated which document went with each request for production.[6] Other tasks that required extensive time included responding to Hunting's summary judgment motion and attending court-ordered mediation. Finally, Laborde asserts that preparation for and participation at trial required hundreds of hours because of the complex nature of the evidence, and that the

---

[5] This hourly total includes a request for reimbursement for 450.5 hours for Laborde, 556.5 hours for Theriot, and 267.8 hours for a legal assistant who attended the trial.

[6] The parties ultimately settled the dispute after Hunting produced an index of the materials.

hours expended in this case are consistent with other employment law cases that proceeded to trial.

Hunting objects to the amount of hours for which Laborde seeks compensation. More specifically, Hunting challenges the billing entries for travel time from Lafayette, Louisiana, where Laborde & Neuner is located, to Houston. Hunting bases its objection on the fact that there are numerous employment law attorneys in Houston whom Condon could have hired, but instead, he opted to retain Laborde, his brother-in-law. Thus, Hunting avers it should not have to bear the cost of Condon's decision to use out-of-town counsel.

The Court agrees with Hunting's objection and declines to order Hunting to pay for travel time and expenses that would not have occurred if Condon had hired local counsel. *See Coal. to Save our Children v. State Bd. of Educ.*, 901 F. Supp. 824, 834 (D. Del. 1995) (declining to reimburse attorneys for travel time when plaintiff did not establish that it could not retain local counsel). Accordingly, the Court will deduct 45 hours of travel time from Laborde's requested total, 25 hours from Theriot's, and 8 hours from the legal assistant who attended the trial.

The Court notes that it undertook a careful review of the billing entries, and concludes that Laborde, as the requesting attorney, has submitted "contemporaneous time records for work performed, specifying the relevant dates, hours expended, and

the nature of the work performed." *See Singer v. City of Waco, Texas*, No. Civ.A.W-99-CA-296, 2001 WL 34773880, at *3 (W.D. Tex. Nov. 13, 2001). Additionally, Laborde submitted an itemization of 152.9 hours his firm worked on the case for which it is not seeking compensation.[7]

However, many of the billing entries prior to trial involve organizing binders of exhibits. During the parties' pretrial conference, Hunting informed the Court that many of its objections to Condon's exhibits included documents produced for the first time in the exhibit lists rather than through discovery as well as settlement and discovery correspondence.[8] Accordingly, the Court exercises its discretion to reduce the hours related to the preparation of these voluminous binders. Thus, the Court will deduct 60 hours from the legal assistant's billing entries. Accordingly, the Court concludes that the hours reasonably expended include: 405.5 for Laborde; 531.5 for Theriot; 27.2 hours of associate time; and 237 hours of law clerk or legal assistant time.

C. Lodestar Figure and the *Johnson* Test

After the appropriate rates and hours expended have been determined, courts

---

[7] The hourly reduction resulted in a $26,415 decrease from the firm's bill. Courts encourage lawyers seeking attorneys fees to exercise billing judgment in which they write off unproductive, excessive or redundant hours. *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006).

[8] Initially, Condon submitted eleven exhibit binders. After the pretrial conference, these binders were reduced to one binder of exhibits used at trial.

must calculate the lodestar "by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Heidtman v County of El Paso,* 171 F.3d 1038, 1043 (5th Cir. 1999). After a court determines the lodestar figure, it should use the *Johnson* factors to determine if an increase or a decrease is warranted. *Singer*, 324 F.3d at 829. There is a strong presumption that the lodestar award is the reasonable fee in a case. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). Accordingly, the Court calculates the lodestar in the instant case as $175,395.

The third part of the fee analysis requires district courts to apply the twelve *Johnson* factors. *See Johnson*, 488 F.2d at 717-19. In doing so, a court may increase or decrease the amount based on the twelve factors, which are:

1. the time and labor required;

2. the novelty and difficulty of the legal questions;

3. the skill required to perform the legal service properly;

4. the preclusion of other employment by the attorney due to the acceptance of this case;

5. the customary fee for similar work in the community;

6. whether the fee is fixed or contingent;

7. time limitations imposed by the client or circumstances;

8. the amount involved and results obtained;

10

9. the experience, reputation, and ability of the attorneys;

10. the "undesirability" of the case;

11. the nature and length of the professional relationship with the client; and

12. awards in similar cases.

*Id.*; *see also Saizan*, 448 F.3d at 800. In applying these factors, a district court must ensure that a fee award does not provide a windfall to the plaintiff.[9] *See Kellstrom*, 50 F.3d at 328.

Hunting asks that the Court reduce the lodestar based on Condon's success at trial. It argues that the fee should be reduced in light of the eighth factor: Laborde's requested fee in light of the results obtained. More particularly, Condon initially sought more than $1.2 million and subsequently asked the jury to award him $480,000 in lost wages, compensatory and punitive damages. The jury awarded Condon $18,000 in lost wages, which is 1.5% of his initial demand and 3.75% of the amount he sought at trial. Thus, Hunting argues that the fee award should be more proportional to the damages award. Finally, Hunting avers that this case did not involve any novel issues of law; rather, it was a straightforward age discrimination suit. On the other hand, Condon

---

[9] "The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan*, 448 F.3d at 800.

argues there is no per se proportionality rule, and the only reason the damages amount was relatively low is because he obtained a comparable job within three weeks of his termination. Moreover, he pursued this suit to clear his name following Hunting's characterization of him as the least productive salesman in his group, and a jury found that the company in fact terminated him because of his age in violation of the law.

The Court agrees there is no per se proportionality rule. *See Saizan*, 448 F.3d at 802 (citing *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 395 (5th Cir. 2003)). However, after carefully reviewing the *Johnson* factors, the Court will decrease the lodestar figure from the previous calculation by 50% in light of the degree of success obtained and the type of case presented. *See Saizan*, 448 F.3d at 802-03; *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047-48 (5th Cir. 1998). Accordingly, the Court concludes $87,697.50 in attorneys' fees is reasonable and appropriate pursuant to controlling case law. *See also Persons v. Jack in the Box*, No. Civ.A. H-03-4501, 2006 WL 846356, at *5 (S.D. Tex. March 31, 2006) (awarding $35,839 in attorneys fees to two experienced employment law practitioners, who each requested and received a $200 hourly billing rate, following a favorable jury verdict with respect to plaintiff's disability discrimination claim).

In addition to the attorneys' fees, Condon seeks recovery of $2,238.31 in his attorneys' out-of-pocket expenses incurred in the course of providing legal services.

This amount includes charges for electronic research, Federal Express packages, long-distance telephone calls, and travel expenses. The Court concludes that portions of these costs are recoverable. *See generally Mota v. Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001). For the reasons discussed above with respect to Condon's selection of out-of-town counsel, the Court will not award travel or long-distance telephone charges. Additionally, the Court will reduce the recovery relative to electronic research to $511 based on the nature of the case and attorneys' experience in employment discrimination cases. Accordingly, the Court grants Condon $896.08 in out-of-pocket attorney costs, for a total recovery of $88,593.58 in attorneys' fees and expenses.

III. COSTS

Condon also seeks reimbursement for costs. He requests the following costs pursuant to pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure and Local Rule 54.2 of the Southern District of Texas: fees paid to the clerk in the amount of $150; fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case in the amount of $1,494.45; fees for exemplification and copies of papers necessarily obtained for use in trial of the case in the amount of $5,752.67; and

13

other costs in the amount of $9,362.87.[10]

Federal Rule of Civil Procedure 54(d)(1) provides for an award of costs "to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). Furthermore, the Fifth Circuit strongly presumes that courts will award costs to the prevailing party. *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th Cir. 1992) (citing *Sheets v. Yamaha Motors Corp. U.S.A.*, 891 F.2d 533, 539 (5th Cir. 1990)).

Title 28 U.S.C. § 1920 identifies recoverable costs:

A judge or clerk of any court of the United States may tax as costs the following:(1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. A court may decline to award the costs listed in the statute, but may not award costs omitted from the list. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987).

Before a court taxes a bill of costs, the party claiming the cost shall attach an

---

[10] The other fees include the expert witness fee of $8,262.87 and a mediation fee for court-ordered mediation of $1,100. Condon's requested costs total $16,759.99.

affidavit that such amount is correct, was necessarily incurred during the case, and the services which gave rise to the cost were actually and necessarily performed. 28 U.S.C. § 1924. Costs of original depositions and copies are recoverable so long as shown to be necessarily obtained for use in the case. *See* 28 U.S.C. §§ 1920 (2)-(4); *see also Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991). "Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court." *Fogleman*, 920 F.2d at 285-86. To assist the court, the prevailing party should provide some demonstration that the costs necessarily result from the litigation. *Id*. at 286. If a party does not set out costs with sufficient particularity, a court may disallow them. *See Davis v. Commercial Union Ins. Co.*, 892 F.2d 378, 385 (5th Cir. 1990).

In the instant case, David Condon filed his request for bill of costs on August 25, 2006, and submitted the appropriate affidavit. Hunting objects to the award of certain copying costs as well as reimbursement for the expert witness and court-ordered mediation fees. After reviewing Condon's submission, the Court concludes the $150 filing fee in addition to the $1,494.45 in deposition transcript fees, which were necessarily obtained for use and actually were used at trial, are recoverable pursuant to § 1920. However, the Court must determine whether the copying, mediation and expert costs requested are allowable under 28 U.S.C. § 1920.

A. Prevailing Party

To determine who is a prevailing party, courts must look to the case as a whole. *Fogleman*, 920 F.2d at 285. Successful recovery on every issue is not required in order to be deemed a prevailing party. *Id.* Here, a jury determined that Hunting discriminated against Condon based on his age. As such, Condon may be awarded certain costs. FED. R. CIV. P. 54(d)(1).

B. Copying Charges

Hunting objects to Condon's request for $5,752.67 in copies. In particular, Hunting challenges Condon's request for $3,098.80 for photocopies of five sets of the eleven binders that contained Condon's proposed trial exhibits. As discussed above, the Court agrees with Hunting that not all of the $3,098.80 in copying expenses were necessarily obtained for use in the case.[11] Accordingly, the Court only will award reimbursement for one eleventh of the cost of preparing the exhibit binders. Thus, only $281.70 of the $3,098.80 is recoverable pursuant to § 1920 as fees necessarily incurred in this litigation. The Court concludes that the remainder of the request also is recoverable. Accordingly, the Court grants Condon's request as to $2,935.57 in

---

[11] As the Court previously noted, Condon initially prepared eleven binders of proposed trial exhibits, which included documents not produced via discovery in addition to settlement and discovery correspondence between the parties. Ultimately, Condon pared down the exhibits to one binder used during trial.

copying costs.

C. Mediation Fee

Condon seeks to recover a $1,100 fee for court-ordered mediation. Hunting argues such a cost is not recoverable because it is neither included in the list of recoverable costs in § 1920 nor authorized by statute or contract. The Court agrees that § 1920 does not specifically provide for recovery of mediation expenses and therefore declines such an award. *Mota*, 261 F.3d at 530; *see also Firth*, 2006 WL 846377, at *9; *Jensen v. Lawler*, 338 F. Supp. 2d 739, 747 (S.D. Tex. 2004).

D. Expert Witness Fees

Condon seeks to recover $8,262.87 expert witness fees and costs related to his economic expert, Haran Levy, who testified during the trial regarding Condon's economic losses. Condon asserts that courts have discretion to award such costs under Texas law. *See* TEX. LAB. CODE ANN. § 21.259(c) (Vernon 2006). In response, Hunting argues this case did not warrant the retention of an expert witness, who was tasked "with a very simple calculation of the amount of wages and benefits Plaintiff would have earned if he had remained employed by Hunting, less the amount Plaintiff earned from his subsequent employer during that period." Hunting further points out that the jury awarded Condon $18,000 in economic damages rather than the $30,000 figure calculated by his expert. Based on Hunting's arguments and exercising its

17

discretion, the Court will award 50%, or $4,131.44, of Condon's requested expert witness fee. Thus, the Court awards Condon a total of $8,711.46 in costs related to this action.

IV. INTEREST

Condon seeks pre- and post-judgment interest on the jury award for lost wages. Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court" at a rate "equal to the weekly 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). The post-judgment interest rate for the week preceding this judgment was 4.97%. Accordingly, the Court grants post-judgment interest on the judgment, including attorneys' fees, at the rate of 4.97%. *See Curry v. Ensco Offshore Co.*, 54 F. App'x. 407 (5th Cir. 2002). This rate is calculated from the date of the entry of the judgment. § 1961(a). However, the Court declines Condon's request for pre-judgment interest. *See McCann v. Texas City Refining, Inc.*, 984 F.2d 667, 673 (5th Cir. 1993) (concluding that courts may not award pre-judgment interest on back pay or liquidated damages awards in ADEA cases).

V. MOTION FOR NEW TRIAL AS TO COMPENSATORY DAMAGES

Having considered Condon's motion for a new trial or court-ordered compensatory damages, the Court determines that based on the submissions and

18

applicable law, the motion should be denied.

## CONCLUSION

Accordingly, the Court hereby

ORDERS that Plaintiff David Condon's Motion to Alter or Amend Judgment and/or for New Trial (Document No. 86) is GRANTED IN PART and DENIED IN PART. Condon shall receive $18,000 in liquidated damages from Defendant Hunting Energy Services, L.P. The Court further

ORDERS that Condon shall recover attorneys' fees and expense in the amount of $88,593.58, and as prevailing party, costs in the amount of $8,711.46 from Hunting. The Court further

ORDERS that the post-judgment interest rate is 4.97%. Finally, the Court

ORDERS that Condon's request for a new trial or for a court award of compensatory damages is DENIED.

SIGNED at Houston, Texas, on this 4th day of October, 2006.

_____
DAVID HITTNER
United States District Judge